IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


JOHN BOURG, JR.,                    §
                                    §
            Plaintiff,              §
                                    §
v.                                  §      CIVIL ACTION NO. H-08-0596
                                    §
BT OPERATING CO., et al.,           §
                                    §
            Defendants.             §


**MEMORANDUM OPINION AND ORDER**


Pending before the court are Defendant Entre Holdings Company's ("Entre") Motion for Summary Judgment(Docket Entry No. 57), Defendant Howard Energy Co., Inc.'s ("Howard") Motion for Summary Judgment (Docket Entry No. 58), and Defendant Greystar Corporation's ("Greystar") Motion for Summary Judgment (Docket Entry No. 59). In response to these three summary judgment motions, plaintiff John Bourg, Jr., filed Plaintiff's Response to Motions for Summary Judgment (Docket Entry No. 62) and Plaintiff's Supplemental Response to All Defendants' Motions for Summary Judgment (Docket Entry No. 76). Howard filed a Reply to Plaintiff John Bourg, Jr.'s Response to Howard Energy Co.'s Motion for Summary Judgment (Docket Entry No. 74). For the reasons stated below, Entre's motion for summary judgment will be granted, but Greystar's and Howard's summary judgment motions will be denied.

## I.  Background

### A.    The Eugene Island 294-B

The Eugene Island 294-B ("EI 294-B") is a fixed offshore platform located off the coast of Louisiana.[1]  The Eugene Island 294-A -- the production platform that was utilized to collect the gas produced from the EI 294-B's wells -- was destroyed by Hurricane Rita in September of 2005.[2]  This left the EI 294-B with no outlet for the gas produced from its wells.[3]  Between September of 2005 and May of 2007 Entre, an owner and/or operator of the EI 294-B, attempted to identify a feasible alternative outlet, but was unsuccessful.[4]  Consequently, the oil and gas lease for the block in which the EI 294-B was located expired, and the EI 294-B was required to be decommissioned and abandoned within twelve months.[5]

### B.    Bourg's Injury

Bourg's employer, APA Fabrications, Inc. ("APA"), was hired as a contractor to assist in the decommissioning of the EI 294-B, and

---

[1]Plaintiff's Third Amended Complaint, Docket Entry No. 20, at 4; Plaintiff's Response to Motions for Summary Judgment, Docket Entry No. 62, at 3, 5.

[2]Entre Holdings Company's Motion for Summary Judgment, Docket Entry No. 57, ¶¶ 7-8; Defendant Greystar Corporation's Motion for Summary Judgment, Docket Entry No. 59, ¶ 6.

[3]Entre Holdings Company's Motion for Summary Judgment, Docket Entry No. 57, ¶ 8; Defendant Greystar Corporation's Motion for Summary Judgment, Docket Entry No. 59, ¶ 6.

[4]Id.

[5]Id.

Bourg was dispatched to the EI 294-B along with other APA employees.[6]  Bourg was allegedly injured on August 13, 2007, when he attempted to swing from a barge, the <u>Diamond Jim</u>, to the EI 294-B on a rope swing that was attached to the platform.[7]  The <u>Diamond Jim</u> was moored next to the EI 294-B, and was used to support the decommissioning operation.[8]  The rope swing was the only means for personnel to move between the barge, where living quarters were located, and the platform.[9]  Bourg and other personnel had been using the rope swing throughout the decommissioning operation.[10]

As Bourg leaned into the swing in preparation to swing from the barge to the platform, the rope broke, causing him to fall backward.[11]  Bourg alleges that he was severely injured as a result

---

[6]Entre Holdings Company's Motion for Summary Judgment, Docket Entry No. 57, ¶ 11; Defendant Greystar Corporation's Motion for Summary Judgment, Docket Entry No. 59, ¶ 9; Defendant Howard Energy Co., Inc.'s Motion for Summary Judgment, Docket Entry No. 58, ¶ 13; Plaintiff's Response to Motions for Summary Judgment, Docket Entry No. 62, at 2-3.

[7]Plaintiff's Third Amended Complaint, Docket Entry No. 20, at 4; Plaintiff's Response to Motions for Summary Judgment, Docket Entry No. 62, at 2-3.

[8]Plaintiff's Response to Motions for Summary Judgment, Docket Entry No. 62, at 3.

[9]<u>See</u> Oral & Videotaped Deposition of John Bourg, Jr., at 57, 63-64 (Jan. 6, 2009) (included in Plaintiff's Response to Motions for Summary Judgment, Docket Entry No. 62, at Exhibit 1).

[10]<u>Id.</u> at 63-64.

[11]<u>Id.</u> at 61-62.

of the fall, spraining his wrist and striking his tailbone on a manhole cover, his back on a scaffold board, and his neck on a skid unit.[12]  Due to his injuries Bourg was unable to continue working on the EI 294-B.[13]  He returned to shore on a supply boat three days later.[14]

Bourg claims that he still experiences severe lower back pain, as well as pain in his neck, shoulder, and wrist.[15]  He contends that he is still unable to work, perform household chores, or engage in recreational activities.[16]

## C.  The Defendants

It is undisputed that Howard was an owner of the EI 294-B at the time of Bourg's accident.[17]  It is also undisputed that Howard was considered the operator of the EI 294-B for the purposes of decommissioning and abandoning the platform.[18]  Howard contracted

---

[12]Id. at 62, 73-75.

[13]Id. at 64-68.

[14]Id. at 67-68.

[15]Id. at 75-76.

[16]Plaintiff's Objections, Answers and Responses to Defendant Howard Energy Co., Inc.'s First Set of Interrogatories, First Requests for Production and First Requests for Admissions, ¶ 4 (included in Defendant Howard Energy Co., Inc.'s Motion for Summary Judgment, Docket Entry No. 58, at Exhibit C).

[17]Defendant Howard Energy Co., Inc.'s Motion for Summary Judgment, Docket Entry No. 58, ¶¶ 8, 9.

[18]Id. at ¶¶ 8, 10.

with various companies, including Bourg's employer, APA, on behalf of the owners of the EI 294-B to conduct the decommissioning work.[19]

Howard, Greystar, and Bourg assert that Entre was a co-owner of the EI 294-B,[20] but Entre denies that it was an owner.[21]  It is undisputed that Entre previously served as the operator of the EI 294-B on behalf of the owners for the purposes of drilling and completing the wells associated with the EI 294-B.[22]

The parties agree that Entre entered into an agreement ("the Agreement") with Greystar dated January 19, 2004, under which Greystar agreed to serve as the operator of the EI 294-B.[23]  The Agreement identified Entre as the "Owner" of the EI 294-B.[24]

_____

[19]Id. at ¶ 13; Entre Holdings Company's Motion for Summary Judgment, Docket Entry No. 57, ¶ 11; Plaintiff's Response to Motions for Summary Judgment, Docket Entry No. 62, at 2.

[20]Howard Energy Co., Inc.'s Motion for Summary Judgment, Docket Entry No. 58, ¶¶ 8-9; Defendant Greystar Corporation's Motion for Summary Judgment, Docket Entry No. 59, ¶ 5; Defendant Greystar Corporation's Answers to Plaintiff's First Set of Interrogatories, ¶ 2 (included in Defendant Greystar Corporation's Motion for Summary Judgment, Docket Entry No. 59, at Exhibit B); Plaintiff's Response to Motions for Summary Judgment, Docket Entry No. 62, at 4.

[21]Entre Holdings Company's Motion for Summary Judgment, Docket Entry No. 57, ¶¶ 5, 11.

[22]Id. at ¶¶ 6-7.

[23]Id. at ¶ 7; Defendant Greystar Corporation's Motion for Summary Judgment, Docket Entry No. 59, ¶ 5; Howard Energy Co., Inc.'s Motion for Summary Judgment, Docket Entry No. 58, ¶¶ 8, 11; Plaintiff's Response to Motions for Summary Judgment, Docket Entry No. 62, at 4.

[24]Greystar Corporation Master Service Contract for Services (Jan. 19, 2004) [hereinafter Agreement] (included in Plaintiff's Response to Motions for Summary Judgment, Docket Entry No. 62, at Exhibit 3).

In a letter dated July 31, 2007, Entre notified Greystar that it was providing thirty days' notice to cancel the Agreement,[25] as it was entitled to do under paragraph 13 of the Agreement.[26]  The letter stated that "the final day of the Agreement between Entre and Greystar will be August 31, 2007."[27]  Greystar contends that it last performed work on the EI 294-B on August 4, 2007, and that none of its personnel were present on the platform after that date.[28]

**D.   Procedural History**

Bourg filed this action pursuant to the Outer Continental Shelf Lands Act ("OCSLA") on February 21, 2008, alleging negligence against BT Operating Company.[29]  Bourg subsequently filed three amended complaints adding and omitting various defendants, but asserting the same theories of liability.[30]  Entre, Howard, and

---

[25]Letter from Brian G. Donnelly to Bruce Taylor (July 31, 2007) [hereinafter Cancellation Letter] (included in Plaintiff's Response to Motions for Summary Judgment, Docket Entry No. 62, at Exhibit 4).

[26]See Agreement, ¶ 13.

[27]Cancellation Letter.

[28]See Defendant Greystar Corporation's Motion for Summary Judgment, Docket Entry No. 59, ¶¶ 8-10, 13.

[29]See Plaintiff's Original Complaint, Docket Entry No. 1.

[30]See Plaintiff's First Amended Complaint, Docket Entry No. 4; Plaintiff's Second Amended Complaint, Docket Entry No. 10; Plaintiff's Third Amended Complaint, Docket Entry No. 20.

Greystar, among others, are named as defendants in Bourg's Third Amended Complaint.[31]  Entre, Howard, and Greystar now contend that they are entitled to summary judgment.

## II.  **Summary Judgment Standard**

Summary judgment is warranted if the movant establishes that there is no genuine dispute about any material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). An examination of substantive law determines which facts are material.  Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986).  Material facts are those facts that "might affect the outcome of the suit under the governing law."  Id.  A genuine issue of material fact exists if the evidence is such that a reasonable trier of fact could resolve the dispute in the nonmoving party's favor.  Id. at 2511.

The movant has the initial burden to inform the court of the basis for summary judgment.  Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).  To meet this initial burden the moving party need not submit affidavits or other evidence negating the non-moving party's claim.  Id.  Instead, the movant may satisfy its burden by pointing out that the pleadings, depositions, answers to interrogatories, admissions, or affidavits on file demonstrate that the plaintiff has failed to make a showing adequate to establish

---

[31]Plaintiff's Third Amended Complaint, Docket Entry No. 20.

the existence of a genuine issue of material fact as to an essential element of his case. <u>Id.</u> at 2552-53.

If the movant makes the required initial showings, the burden shifts to the nonmoving party to show by affidavits, depositions, answers to interrogatories, admissions, or other evidence that summary judgment is not warranted because genuine fact issues exist. <u>See</u> <u>id.</u> Conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence will not satisfy the nonmovant's burden. <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994). If the nonmovant fails to present specific evidence showing there is a genuine issue for trial, summary judgment is appropriate. <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1132 (5th Cir. 1992).

In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Prods. Inc.</u>, 120 S. Ct. 2097, 2110 (2000). But if "critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant," summary judgment should be granted. <u>Armstrong v. City of Dallas</u>, 997 F.2d 62, 67 (5th Cir. 1993). Moreover, if there is an <u>absence</u> of evidence, the court will not "assume that the nonmoving party could or would prove the necessary facts." <u>Little</u>, 37 F.3d at 1075 (citing <u>Lujan v. National Wildlife Fed'n</u>, 110 S. Ct. 3177, 3188 (1990)).

### III.  <u>Applicable Law</u>

The court has jurisdiction pursuant to the Outer Continental Shelf Lands Act ("OCSLA").  <u>See</u> 43 U.S.C. § 1349(b)(1) (granting jurisdiction over disputes arising out of or in connection with the exploration, development, or production of minerals on the outer Continental Shelf).  In actions brought under the OCSLA "federal law governs . . . to the extent that there is applicable federal law; however, if there is a gap in the federal law, the law of the adjacent state is used as a gap-filler and becomes surrogate federal law."  <u>Bartholomew v. CNG Producing Co.</u>, 862 F.2d 555, 557 (5th Cir. 1989).  <u>See also</u> 43 U.S.C. § 1333(a)(2)(A).

The parties apparently agree that state law, as surrogate federal law, governs in this case, but they disagree as to which state's law is applicable.  Greystar and Entre do not directly address the issue of governing law in their summary judgment motions, but apparently believe that Texas law applies.  In discussing the applicable tort standard, both Greystar and Entre cite only one case, a Fifth Circuit opinion reciting the elements a plaintiff must prove to recover for negligence under Texas law.  <u>See</u> <u>Lane v. Haliburton</u>, 529 F.3d 548, 565 (5th Cir. 2008).  Howard does not take a position on which state's law applies, and analyzes Bourg's claim under both Texas and Louisiana law.  Bourg asserts in his response to the defendants' summary judgment motions that Louisiana law applies because the EI 294-B is located off the coast

of Louisiana, but Bourg provides the court with no evidence or authority to support this assertion.

The Fifth Circuit has explained that a court should consider four factors in determining which state a fixed platform is "adjacent" to for OCSLA choice-of-law purposes:  "(1) geographic proximity; (2) which coast federal agencies consider the subject platform to be 'off of'; (3) prior court determinations; and (4) projected boundaries." Snyder Oil Corp. v. Samedan Oil Corp., 208 F.3d 521, 524 (5th Cir. 2000).  The parties have not provided the court with evidence or authorities for any of the four factors. The court, therefore, takes judicial notice of the geographic location of the Eugene Island 294-B based on a detailed map published by the United States Department of the Interior, Minerals Management Service ("MMS"). See Fed. R. Civ. P. 201(b)(2), (c); United States Department of the Interior, Mineral Management Service, Visual 1, Active Leases and Infrastructure, Gulf of Mexico Outer Continental Shelf (Jan. 2009), available at http://www.gomr. mms.gov/homepg/lsesale/visual1.pdf [hereinafter Visual 1].  The map depicts the Eugene Island Area to be located directly south of St. Mary and St. Martin Parishes, which are located on the south-central coast of Louisiana.  See Visual 1.  Louisiana is clearly the nearest state.

Furthermore, prior federal court opinions unanimously characterize other platforms or lease blocks in the Eugene Island Area as being adjacent to or off the coast of Louisiana.  See,

e.g., Amoco Prod. Co. v. Forest Oil Corp., 844 F.2d 251, 252 (5th Cir. 1988) (Eugene Island Block 273); Corbitt v. Diamond M. Drilling Co., 654 F.2d 329, 330 (5th Cir. 1981) (Eugene Island Block 18); Davis v. Hill Eng'g, Inc., 549 F.2d 314, 317 (5th Cir. 1977) (Eugene Island Block 287), overruled on other grounds by Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331, 339 (5th Cir. 1997); Baudoin v. Houston Exploration Co., No. G-06-0512, 2008 WL 4791480, at *1 (S.D. Tex. Oct. 30, 2008) (Eugene Island 331-B); Online Res., Inc. v. Stone Energy Corp., No. 99-2006, 1999 WL 997495, at *1 (E.D. La. Oct. 29, 1999) (Eugene Island 243 Field).   Based on these two factors the court concludes that Louisiana is the adjacent state.   Cf. Snyder Oil, 208 F.3d at 524 ("[I]f the parties present evidence on only one factor, that factor is controlling.").   Therefore, if state law governs, it will be the law of Louisiana.

In order for state law to be applied as surrogate federal law three conditions must be satisfied:

> (1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto).
>
> (2) Federal maritime law must not apply of its own force.
>
> (3) The state law must not be inconsistent with [f]ederal law.

Strong v. BP Exploration & Production, Inc., 440 F.3d 665, 668 (5th Cir. 2006) (quoting Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.,

-11-

895 F.2d 1043, 1047 (5th Cir. 1990)).  This controversy arises on a situs covered by OCSLA.  It is undisputed that the EI 294-B is a fixed platform that was used for developing and producing resources from the subsoil or seabed of the outer Continental Shelf.  See 43 U.S.C. § 1333(a)(1).  Although Bourg fell on the Diamond Jim, a vessel,[32] because he "was in physical contact with the rope, a portion of the platform, at the time of his unfortunate landing on the [Diamond Jim]," OCSLA applies.  Hodgen v. Forest Oil Corp., 87 F.3d 1512, 1527 (5th Cir. 1996) (citing Hollier v. Union Petroleum Corp., 972 F.2d 662, 665 (5th Cir. 1992); Smith v. Penrod Drilling Corp., 960 F.2d 456, 459 (5th Cir. 1992)).  See also Rodrique v. Aetna Cas. & Sur. Co., 89 S. Ct. 1835, 1836-37 (1969) (holding that OCSLA, and thus state law, governed the claim of an offshore worker who was killed when the crane he was operating, which was mounted to a fixed platform, collapsed and fell onto a barge).

Furthermore, neither federal admiralty law nor federal common law independently applies.  See Rodrique, 89 S. Ct. at 1839-42 (holding that federal admiralty law does not apply to accidents occurring on fixed offshore drilling platforms, and therefore, that state law governs pursuant to OCSLA).  Nor do the parties or applicable precedents suggest that Louisiana tort law is inconsistent with federal law.  See Fontenot v. Dual Drilling Co., 179 F.3d 969, 977 (5th Cir. 1999) ("[O]ur circuit has consistently rejected

---

[32]43 U.S.C. § 1333(a)(1) explicitly excludes ships and vessels.

attempts of litigants to have 'federal common law' override rules of Louisiana tort law in actions arising on fixed platforms on the Outer Continental Shelf."). Accordingly, Louisiana law governs.

## IV. <u>Analysis</u>

**A.   Entre**

Entre contends that it is entitled to summary judgment because it owed no duty to Bourg. Entre asserts that it did not have a duty because it had no ownership interest in or right of control of the platform, had no role in decommissioning the platform, and had no supervisory role or right of supervision over the work conducted on the platform. Entre also asserts that even if it did have a duty, there is no evidence that it breached any duty that may have applied.

### 1.   <u>Duty</u>

Under Louisiana tort law "[t]he threshold issue in any negligence action is whether the defendant owed the plaintiff a duty . . . ." <u>Hanks v. Entergy Corp.</u>, 944 So.2d 564, 580 (La. 2006). Whether the defendant owed a duty to the plaintiff is a question of law, <u>id.</u>, but requires the court to conduct a fact-specific analysis. <u>Myers v. Dronet</u>, 801 So.2d 1097, 1109 (La. Ct. App. 3d Cir. 2001). Bourg asserts that Entre owed him a duty under several principles of Louisiana law, each of which is addressed in turn.

-13-

a.   Louisiana Civil Code Articles 2317 and 2317.1

Bourg first asserts that Entre had a duty under Louisiana Civil Code articles 2317 and 2317.1 because of its status as an owner or custodian of the platform and the attached rope swing. Article 2317 provides:

> We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody.  This, however, is to be understood with the following modifications.

La. Civ. Code Ann. art. 2317 (1997).  Article 2317.1 provides:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.  Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

La. Civ. Code Ann. art. 2317.1 (1997).

Bourg asserts that Entre was an owner of the EI 294-B and the attached rope swing, and as such was subject to the duties imposed by these statutes.  Although Entre denies that it held an ownership stake in the platform, there is evidence in the record that suggests Entre was an owner.  The Agreement between Entre and Greystar refers to Entre as the "Owner."[33]  Greystar stated in answers to interrogatories that it believed Entre was an owner,[34]

---

[33]Agreement, at introductory paragraph.

[34]Defendant Greystar Corporation's Answers to Plaintiff's First Set of Interrogatories, ¶ 2 (included in Defendant Greystar
(continued...)

-14-

and Howard submitted an affidavit characterizing Entre as a co-owner.[35]  Therefore, a fact issue exists as to whether Entre was an owner of the EI 294-B at the time of Bourg's accident.  Ownership alone, however, is not enough to trigger a duty under articles 2317 and/or 2317.1.

Article 2317 speaks in terms of "custody" and does not mention ownership.  Accordingly, prior to the enactment of article 2317.1 in 1996, Louisiana jurisprudence held that article 2317 imposed a duty "based on custody and not ownership."  Thumfart v. Lombard, 613 So.2d 286, 290 (La. Ct. App. 4th Cir. 1993).  See also, e.g., Doughty v. Insured Lloyds Ins. Co., 576 So.2d 461, 464 (La. 1991) (explaining that duty under article 2317 is triggered by custody, not ownership alone).  Although the plain language of article 2317.1 seems to impose a duty on either an "owner or custodian," La. Civ. Code Ann. art. 2317.1 (emphasis added), Louisiana courts have continued to hold that the statutory duty is only triggered upon a showing of custody, not mere ownership.  See, e.g., Gallina v. Hero Land Co., 859 So.2d 758, 762-66 (La. Ct. App. 4th Cir. 2003) (concluding that the defendant, although the undisputed owner of the land upon which the accident occurred, did not have custody

---

[34](...continued)
Corporation's Motion for Summary Judgment, Docket Entry No. 59, at Exhibit B).

[35]Affidavit of Warner Michael Palmer, ¶ 3 (January 21, 2009) (included in Defendant Howard Energy Co., Inc.'s Motion for Summary Judgment, Docket Entry No. 58, at Exhibit A).

-15-

and thus was not liable under article 2317.1); <u>Klein v. Cisco-Eagle, Inc.</u>, 855 So.2d 844, 852 (La. Ct. App. 2d Cir. 2003) (holding that "[l]iability under articles 2317 and 2317.1 . . . is not based on ownership, but on care, custody and control"); <u>LeBlanc v. Trappey</u>, 838 So.2d 860, 863 (La. Ct. App. 3d Cir. 2003) (explaining that in order to determine whether article 2317.1 imposed a duty on the defendant -- who was the undisputed owner of the thing in question -- the court had to "ascertain whether he had custody or <u>garde</u> of the [thing]," and stating that "the owner of a thing is not always its custodian"). <u>But see</u> <u>Britton v. Williams</u>, 914 So.2d 1151, 1155 (La. Ct. App. 2d Cir. 2005) (suggesting that ownership alone would be sufficient to trigger the statutory duty under article 2317.1). Therefore, Bourg must show that Entre had custody of the platform and the attached rope swing to trigger the statutory duty(s) under articles 2317 and/or 2317.1.

"Custody," or "<u>garde</u>," is "a principle much broader than ownership . . . ." <u>Dupree v. City of New Orleans</u>, 765 So.2d 1002, 1009 (La. 2000). "Determining who has the custody or <u>garde</u> of the thing is a fact driven determination." <u>Id.</u> Further, "more than one party may have custody or <u>garde</u> of a thing." <u>Id.</u> A court determining whether a particular party had custody of a thing should consider (1) whether the party had "the right of direction and control over the thing;" and (2) what kind of benefit, if any, the party derived from the thing. <u>Id.</u> Ownership creates a presumption of custody, but the presumption may be rebutted "by

-16-

proof that [the owner] did not have supervision or control over it." LeBlanc, 838 So.2d at 863.

Assuming arguendo that Entre owned the platform, the presumption of custody applies.   Entre, however, submitted the affidavit of Brian G. Donnelly, its Vice-President, Secretary, and Chief Financial Officer, in which Donnelly averred that after drilling and well completion in late 2003 Entre turned over the day-to-day operations of the platform to Greystar.[36]   Under the Agreement with Greystar, Greystar was an independent contractor, and Entre had no control over the services provided by Greystar.[37] Donnelly also stated that after July of 2007, "Entre had no involvement with any abandonment or other activities concerning the subject lease or platform," and that it had no right of supervision or control over the platform, well, or rope swing.[38]   Additionally, Howard admits that it was the operator of the platform for the purposes of the decommissioning operation.[39]   This evidence is uncontroverted, and no other evidence in the record suggests that Entre had any right of direction or control over the platform or

---

[36]See Affidavit of Brian G. Donnelly (Jan. 21, 2009) (included in Entre Holdings Company's Motion for Summary Judgment, Docket Entry No. 57, at Attachment 1).

[37]See Agreement, ¶ 11.

[38]Affidavit of Brian G. Donnelly (Jan. 21, 2009) (included in Entre Holdings Company's Motion for Summary Judgment, Docket Entry No. 57, at Attachment 1).

[39]See Defendant Howard Energy Co., Inc.'s Motion for Summary Judgment, Docket Entry No. 58, ¶ 8.

the rope swing at the time of Bourg's injury.  Therefore, Entre has effectively rebutted the presumption of custody, and Bourg has failed to present sufficient evidence to create a genuine issue of fact as to whether Entre owed him a duty under articles 2317 and/or 2317.1.

b.  Louisiana Civil Code Article 2322

Bourg next contends that Entre had a duty under Louisiana Civil Code article 2322 because it was an owner of the platform and the attached rope swing.  Article 2322 provides:

> The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction.  However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.  Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

La. Civ. Code Ann. art. 2322 (1997).  For the purposes of this analysis, the court again assumes _arguendo_ that Entre was an owner of the EI 294-B.

Fixed offshore platforms are considered to be "buildings" within the meaning of article 2322.  See, e.g., _Hyde v. Chevron U.S.A., Inc._, 697 F.2d 614, 620 (5th Cir. 1983); _Olsen v. Shell Oil Co._, 365 So.2d 1285, 1290 (La. 1978).  Liability under article 2322 may be imposed on owners based on defects or ruinous conditions in the building itself, or in the building's "appurtenances."  _Coulter_

-18-

v. Texaco, 117 F.3d 909, 914 (5th Cir. 1997); Entrevia v. Hood, 427 So.2d 1146, 1148 (La. 1983).  Because Bourg does not assert that any defect or ruinous condition existed in the structure or material of the platform itself, but only in the rope swing, his claim "rises or falls on [his] ability to prove that at the time of the injury [the rope swing] had become an appurtenance to, or integral part of, [Entre's] platform by virtue of [its] physical attachment to that structure."  Coulter, 117 F.3d at 914.

A thing is considered to be an appurtenance to a building if it is "permanently attached" to the building within the meaning of article 466 of the Louisiana Civil Code.  Fruge v. Parker Drilling Co., 337 F.3d 558, 565 (5th Cir. 2003); Coulter, 117 F.3d at 914-15 ("Louisiana Civil Code Article 466 has indeed come to provide the appropriate and sole criterion for determining whether an addition has become an integral part of a building for purposes of imposing liability on the building's owner under Article 2322.").  The version of Article 2322 in effect on the date of Bourg's injury provided:

> Things permanently attached to a building or other construction are its component parts.
>
> Things such as plumbing, heating, cooling, electrical, or other installations are component parts of a building or other construction as a matter of law.
>
> Other things are considered to be permanently attached to a building or other construction if they cannot be removed without substantial damage to themselves or to building or other construction or if, according to prevailing notions in society, they are considered to be its component parts.

-19-

Act No. 765, § 1, 2006 La. Sess. Law Serv. 1269 (West), amended by Act No. 632, § 1, 2008 La. Sess. Law Serv. 1624-25 (West).

Bourg has not pointed to any evidence that the rope swing was a component part of the platform. Nothing suggests that the swing qualifies as a plumbing, heating, cooling, or electrical installation. See id. Nor is there any evidence that the rope swing could not be removed without substantial damage to the swing or platform or that, "according to prevailing notions in society," a rope swing is a component part of an offshore platform. Id. See also Coulter, 117 F.3d at 916-918 (discussing the application of article 466, including the "'ordinary societal expectations' test").[40]   Therefore, Bourg has failed to present sufficient evidence to create a genuine issue of fact as to whether the rope swing was an appurtenance to the platform, and thus, as to whether Entre -- or any of the defendants -- owed him a duty under article 2322.

---

[40]Coulter applied an older, but not materially different, version of article 466, which provided:

> Things permanently attached to a building or other construction, such as plumbing, heating, cooling, electrical, or other installations, are its component parts.
>
> Things are considered permanently attached if they cannot be removed without substantial damage to themselves or to the immovable to which they are attached.

Coulter, 117 F.3d at 916 (quoting La. Civ. Code Ann. art. 466 (1980)).

c.   OCSLA and Associated Regulations

Bourg contends that OCSLA and associated regulations imposed a duty on Entre, as the platform owner or as a lessee of the offshore mineral rights, to maintain the platform in compliance with workplace safety and health regulations and free from hazards. Specifically, Bourg cites 43 U.S.C. § 1348(b)(1), which provides:

> It shall be the duty of any holder of a lease or permit under this subchapter to–
>
> (1) maintain all places of employment within the lease area or within the area covered by such permit in compliance with occupational safety and health standards and, in addition, free from recognized hazards to employees of the lease holder or permit holder or of any contractor or subcontractor operating within such lease area or within the area covered by such permit on the outer Continental Shelf;

43 U.S.C. § 1348(b)(1).  Bourg also relies on 33 C.F.R. § 142.4(a)-(c), a regulation promulgated by the United States Coast Guard pursuant to OCSLA.  This regulation also requires lease holders, permit holders, operators, owners, contractors, and subcontractors to ensure that the workplace and their operations are maintained or conducted "in compliance with workplace safety and health regulations of this part and, in addition, free from recognized hazards."  33 C.F.R. § 142.4(a), (b).

The Fifth Circuit has rejected similar attempts to rely on OCSLA and its underlying regulations as the basis for tort suits. The court has explained that a violation of regulations promulgated under OCSLA "does not give rise to a private cause of action."

-21-

<u>Fruge</u>, 337 F.3d at 563 (citing <u>Romero v. Mobil Exploration &</u>
<u>Producing N. Am., Inc.</u>, 939 F.2d 307, 310-11 (5th Cir. 1991)).
"The regulations govern the parties' joint and several liabilities
vis-à-vis the Government, not amongst themselves." <u>Id.</u>  <u>See also,</u>
<u>e.g.</u>, <u>Dupre v. Chevron U.S.A., Inc.</u>, 109 F.3d 230 (5th Cir. 1997)
(per curiam) (holding that "the regulations adopted pursuant to
[OCSLA] provide no basis for an implied cause of action against
[the platform owner]; nor do those regulations create an
independent duty under Louisiana law on the part of . . . the
platform owner").  Therefore, as a matter of law, Bourg cannot
recover from Entre -- or any of the defendants -- on this basis.

        d.   Liability for Negligently Hiring and/or Failing to
            Supervise Independent Contractor

Bourg asserts that Entre had a duty to act reasonably in
selecting, hiring, and supervising its independent contractor,
Greystar, which controlled the day-to-day operations of the
platform and inspected and maintained the rope swing.  Under
Louisiana law, a principal generally "has no duty to discover and
remedy hazards created by its independent contractors." <u>Fruge</u>, 337
F.3d at 564 (quoting <u>Wallace v. Oceaneering Int'l</u>, 727 F.2d 427,
437 (5th Cir. 1984)).  The principal can only be liable for the
acts or omissions of its independent contractor if (1) the
contractor engages in "ultrahazardous" work, or (2) the principal
"reserves the right to supervise or control the work." <u>LeJune v.</u>

-22-

<u>Shell Oil Co.</u>, 950 F.2d 267, 270 (5th Cir. 1992) (quoting <u>Triplette v. Exxon Corp.</u>, 554 So.2d 1361, 1362 (La. Ct. App. 1st Cir. 1989)).

The activity in which Greystar engaged was not ultrahazardous. <u>See</u> <u>Smith v. Hall-Houston Oil Co.</u>, No. 98-3433, 2000 WL 6265, at *3 (E.D. La. Jan. 4, 2000) (holding that the activities conducted by subcontractors that were hired to perform all maintenance and inspection operations on an offshore platform were not ultrahazardous). Therefore, the first exception to the general rule does not apply in this case.

To determine whether Entre reserved the right to supervise Greystar's work the court must look to the language of the Agreement that governed the relationship between Entre and Greystar. <u>See</u> <u>Fruge</u>, 337 F.3d at 564 (citing <u>Coulter</u>, 117 F.3d at 912). "When the contract assigns the independent contractor responsibility for its own activities, the principal does not retain operational control." <u>Id.</u> Paragraph 11 of the Agreement states that

> Greystar is an independent contractor, [Entre] being interested only in the results obtained. This is evidenced by [Entre's] lack of control over the Services, Greystar's obligation to provide the necessary tools, supplies and materials to perform the Services, and the skill required of Greystar for the performance of the Services.[41]

In light of this language, the court concludes that Entre did not retain operational control over Greystar and, therefore, had no

---

[41]Agreement, ¶ 11.

-23-

duty to supervise Greystar or discover and remedy any dangerous conditions that Greystar's acts or omissions may have created.  Nor can Entre be held vicariously liable for any of Greystar's acts or omissions.  <u>See</u> <u>Fruge</u>, 337 F.3d at 564-65; <u>LeJune</u>, 950 F.2d at 270.

As Bourg points out, however, Louisiana law imposes a separate duty on principals to exercise reasonable care in selecting or hiring an independent contractor.  <u>See</u> <u>Hemphill v. State Farm Ins. Co.</u>, 472 So.2d 320, 324 (La. Ct. App. 3d Cir. 1985) ("One who hires an irresponsible independent contractor may be independently liable." (citing <u>Evans v. Allstate Ins. Co.</u>, 194 So.2d 762 (La. Ct. App. 1st Cir. 1967))).  The court must therefore analyze whether there is any evidence in the record to suggest that Entre breached this duty.

2.  <u>Breach</u>

Entre had a duty to exercise reasonable care to ensure that the independent contractor that it hired was responsible.  <u>See</u> <u>Hemphill</u>, 472 So.2d at 324.  Entre breached this duty if it knew or should have known that Greystar was irresponsible.  <u>See</u> <u>id.</u>  There is no evidence in the record, however, to support a finding that Entre knew or had any reason to know that Greystar would not diligently carry out its duties as the platform operator.

Even assuming <u>arguendo</u> that Greystar was negligent in failing to properly inspect or maintain the rope swing, that does not mean that Entre breached its duty.  Entre must have known or have had

-24-

reason to know <u>before</u> it hired Greystar that Greystar would not be responsible.  <u>See</u> <u>id.</u> (holding, although it was undisputed that the independent contractors were drinking on the job, that the principal was not negligent in hiring them because he "neither knew nor should have known of [the independent contractors'] drinking").  Bourg has presented no evidence to suggest that Entre knew or had reason to know of Greystar's alleged incompetence.  Because there are no genuine issues of material fact as to Entre's liability under any of the legal theories asserted by Bourg, Entre is entitled to summary judgment.

**B.   Greystar**

Greystar asserts that it owed no legal duty to Bourg because it had no ownership interest or right to control the platform and because it was not involved in the decommissioning work.  Greystar alternatively asserts that even if it owed a duty to Bourg, there is no evidence that it breached that duty.

1.   <u>Duty</u>

Bourg contends that Greystar owed a duty to him under Louisiana Civil Code articles 2317 and 2317.1, among other reasons.  Bourg does not allege that Greystar owned the EI 294-B or the allegedly defective rope swing that caused his injury, but contends that Greystar had custody of it.  A court determining whether a particular party had custody of a thing should consider (1) whether

-25-

the party had "the right of direction and control over the thing;" and (2) what kind of benefit, if any, the party derived from the thing.  Dupree, 765 So.2d at 1009.   See also Fruge, 337 F.3d at 565 ("[A] non-owner defendant may have custody over property if 'he exercises direction and control of the thing and derives some benefit from it.'" (quoting Coulter, 117 F.3d at 914)).

Greystar contends that it did not have any right of direction or control over the platform or the rope swing.  Bourg, however, asserts that evidence in the record shows that Greystar contractually agreed to operate the platform, and that part of its duties in operating the platform included inspecting the rope swing and ensuring that it was safe.

It is undisputed that Greystar entered into the Agreement with Entre, under which it agreed to "provide all services . . . reasonably and necessary incident to the reasonably prudent operations of" the platform.[42]  Inspection records maintained by Greystar suggest that Greystar personnel inspected the condition of the rope swings on the platform on a monthly basis, presumably in furtherance of Greystar's role as operator of the EI 294-B under the Agreement.[43]  Further, although Greystar contends that Entre had

---

[42]Agreement, ¶ 2.

[43]See Monthly M.M.S. Compliance Inspection Test Data and Maintenance Record, at 7 (August 4, 2007) (included in Plaintiff's Response to Motions for Summary Judgment, Docket Entry No. 62, at Exhibit E).

terminated the Agreement prior to Bourg's accident and that Greystar personnel were last present on the EI 294-B on August 4, 2007, the letter from Entre to Greystar notifying it of the termination of the Agreement stated that the Agreement would remain in effect until August 31, 2007.[44]  This evidence is sufficient to create a fact issue as to whether Greystar had the right of direction and control over the EI 294-B, including the rope swing, on the day of Bourg's injury.

With regard to whether Greystar derived a benefit from the thing, i.e., the rope swing, the Agreement states that Greystar was to receive compensation for its operation of the platform, which included its use and inspection of the rope swing.[45]  Furthermore, Howard submitted the affidavit of its general manager, Warner Michael Palmer, who averred that Howard paid Greystar's invoices on behalf of all of the owners.[46]  Additionally, Bourg testified in his deposition that the rope swing was the only way for people to move off and onto the platform.[47]  From this, a fact-finder could infer that Greystar personnel used the rope swing to gain access to the

_____

[44]See Cancellation Letter.

[45]See Agreement, ¶ 4.

[46]Affidavit of Warner Michael Palmer, ¶ 4 (January 21, 2009) (included in Defendant Howard Energy Co., Inc.'s Motion for Summary Judgment, Docket Entry No. 58, at Exhibit A).

[47]Oral & Videotaped Deposition of John Bourg, Jr., at 63-64 (Jan. 6, 2009) (included in Plaintiff's Response to Motions for Summary Judgment, at Exhibit 1).

-27-

platform to carry out operational duties.  This evidence creates an issue of fact as to whether Greystar obtained a benefit from its use of and responsibility to inspect and maintain the rope swing. Accordingly, fact issues exist with regard to Greystar's custody of the thing in question, i.e., the rope swing, and therefore, whether it owed Bourg a statutory duty under article 2317.1.

    2.  <u>Breach</u>

Article 2317.1 "imposes a two-prong duty upon the owner or custodian of a thing." <u>Myers</u>, 801 So.2d at 1108.  Under the first prong the custodian has a "duty to exercise reasonable care in discovering ruin, vice, or defect." <u>Id.</u>  To be actionable the ruin, vice, or defect must present an unreasonable risk of harm. <u>Grogan v. Women's and Children's Hospital, Inc.</u>, 981 So.2d 162, 164 (La. Ct. App. 3d Cir. 2008).  The second prong requires the custodian to "exercise reasonable care in preventing damages which the thing may cause others." <u>Myers</u>, 801 So.2d at 1108.  Whether a defendant has breached its duty is a question of fact. <u>Id.</u> (citing <u>Mundy v. Dep't of Health & Human Res.</u>, 620 So.2d 811, 813 (La. 1993)).

Bourg contends that evidence in the record supports an inference that Greystar breached its duty.  Specifically, Bourg asserts that the evidence showing that the swing broke in the course of its ordinary use resulting in his injury is enough to create a genuine issue of fact as to whether Greystar fulfilled its duty.

The fact that the rope -- which provided the only means of transport between the barge and the platform -- broke under the weight of a single man and resulted in Bourg's injury suggests that there was an unreasonable risk of harm.  Additionally, Greystar states that its personnel had not visited the platform since August 4, 2007, nine days before Bourg's accident, even though evidence in the record suggests that its contractual duties to operate the platform did not terminate until August 31, 2007. Inspection records indicate that Greystar personnel inspected the rope swing on August 4, 2007, and found that it was in "good condition."[48]   After August 4, 2007, however, "Greystar made no repairs, additions, alterations, renovations, improvements, nor did it perform any work on the area or equipment of the platform including, but not limited to, the swing rope."[49]   This "admission of no inspection . . . is a significant fact."  Birdsong v. Hirsch Memorial Coliseum, 889 So.2d 1232, 1236 (La. Ct. App. 2d Cir. 2004).  It could support a finding that Greystar failed to exercise reasonable care to identify unreasonable risks of harm as it had a

---

[48]Monthly   M.M.S.   Compliance   Inspection   Test   Data   and Maintenance Record, at 7 (August 4, 2007) (included in Plaintiff's Response to Motions for Summary Judgment, Docket Entry No. 62, at Exhibit E).

[49]Defendant Greystar Corporation's Answers to Plaintiff's First Set of Interrogatories, ¶ 14 (included in Defendant Greystar Corporation's Motion for Summary Judgment, Docket Entry No. 59, at Exhibit B).

duty to do if it was, in fact, a custodian of the platform.  <u>See</u> <u>id.</u>  Whether such a finding is warranted or not is a determination that must be made by the trier of fact.  Because genuine fact issues exist as to whether Greystar owed a duty to Bourg and as to whether it breached that duty, Greystar's motion for summary judgment will be denied.[50]

### C.    **Howard**

Howard asserts that it owed no legal duty to Bourg because (1) even though it owned the platform, it did not have custody of the platform or the rope swing, and (2) it was not vicariously liable for the acts of its independent contractors.   Howard alternatively asserts that, even if it owed a duty to Bourg, there is no evidence that it breached any duty.

### 1.   <u>Duty</u>

Bourg asserts that Howard owed him a duty of care, <u>inter alia</u>, under articles 2317 and 2317.1 of the Louisiana Civil Code.  Howard contends, however, that it did not have a duty under article 2317 and 2317.1 because, although it was the owner of the platform and, thus, also the rope swing, it did not have custody of the platform and/or the rope swing because it had contractually delegated control of the platform, as well as maintenance and inspection

---

[50]The court need not evaluate the additional grounds for liability asserted by Bourg against Greystar.

responsibilities, to Greystar.[51]  As the court explained above, Bourg must show that Howard had custody of the thing that caused his injury, i.e., the rope swing, to trigger the statutory duty under articles 2317 and 2317.1, not just that it was an owner.[52] See Gallina, 859 So.2d at 762-66; Klein, 855 So.2d at 852; LeBlanc, 838 So.2d at 863.

Because Howard was admittedly the owner of the platform and the attached rope swing, the fact-finder may presume that Howard was the custodian.[53]   See LeBlanc, 838 So.2d at 863.   If the presumption alone is not sufficient, Howard could be found to have

---

[51]Howard also asserts in its reply to Bourg's response that Bourg's reliance on articles 2317 and 2317.1 is not supported by his Third Amended Complaint.  Bourg's Third Amended Complaint asserts a claim for negligence, stating that "[t]he conduct of Defendants constituted negligence as that term is understood in law. . . ."  Plaintiff's Third Amended Complaint, Docket Entry No. 20, at 5.  Although Bourg does not specifically invoke articles 2317 and 2317.1 in his complaint, Howard acknowledges in its reply that articles 2317 and 2317.1 impose a negligence standard.  See Defendant Howard Energy Co., Inc.'s Reply to Plaintiff John Bourg, Jr.'s Response to Howard Energy Co.'s Motion for Summary Judgment, Docket Entry No. 74, at 4.  See also Myers, 801 So.2d at 1106 ("[W]ith 2317.1's advent, 2317, in effect, actually implements a cause of action based on negligence principles.").  Accordingly, under the liberal notice pleading standard of Federal Rule of Civil Procedure 8(a), Bourg's Third Amended Complaint is sufficient to support Bourg's reliance on articles 2317 and 2317.1 as a basis for negligence liability.  See Fed. R. Civ. P. 8(a)(2) (requiring only a "short and plain statement of the claim").

[52]See supra Part IV.A.1.a.

[53]The presumption is rebuttable, LeBlanc, 838 So.2d at 863, but as the court will explain, Howard has not produced sufficient evidence to conclusively prove that it did not have custody of the platform and the rope swing.

had custody if it (1) had "the right of direction and control over the thing," and (2) derived a benefit from the thing.  <u>Dupree</u>, 765 So.2d at 1009.

Howard admits that it was "the operator of EI 294-B for the purposes of the decommissioning work."[54]  This suggests that Howard had direction and control over the platform and the attached rope swing at the time of Bourg's injury.  Howard, however, argues that it did not have direction and control over the platform because control of the platform had been contractually delegated to Greystar.[55]

Howard relies primarily on the unpublished opinion in <u>Smith v. Hall-Houston Oil Co.</u>, No. 98-3433, 2000 WL 6265 (E.D. La. Jan. 4, 2000), for the proposition that a platform owner can contractually delegate control and direction of the premises to an operator and thereby avoid having a duty under articles 2317 and 2317.1.  The <u>Smith</u> court held that Hall-Houston, the platform owner, had delegated control of operations on the platform to two operating companies such that it did not have custody over the defective instrumentality -- a rope swing -- that caused plaintiff's injury. <u>Smith</u>, No. 98-3433, 2000 WL 6265, at *4.  Because Hall-Houston did

---

[54]Defendant Howard Energy Co., Inc.'s Motion for Summary Judgment, Docket Entry No. 58, ¶ 8.

[55]Howard does not assert that it directly delegated its duties to Greystar via contract, but that it was a third-party beneficiary of the Agreement between Entre and Greystar.

not have custody of the rope swing, the <u>Smith</u> court concluded that Hall-Houston did not have a duty under articles 2317 and 2317.1 with regard to the rope swing.   <u>Id.</u>   In <u>Smith</u>, however, there were no allegations or evidence that the agreements with the operating contractors had been cancelled and/or that the operating contractors had abandoned the platform.   In this case, Greystar, the alleged contract operator, has submitted evidence that its contract had been cancelled, that it was no longer serving as the operator, and that it did not have any personnel present on the platform on the date of Bourg's injury.[56]

The court acknowledges that there is also evidence in the record suggesting that Greystar's operating contract remained in effect through August 31, 2007.[57]  But, because Howard has admitted that it, not Greystar, was the operator for the purposes of the decommissioning work and because Greystar contends that it had essentially abandoned the platform as of August 4, 2007, nine days before Bourg was injured, the court concludes that genuine issues of material fact exist as to whether Howard had control and direction over the platform and rope swing on August 13, 2007, the day Bourg was injured.

---

[56]<u>See</u> Cancellation Letter; Defendant Greystar Corporation's Answers to Plaintiff's First Set of Interrogatories, ¶¶ 3, 14, 17, 18 (included in Defendant Greystar Corporation's Motion for Summary Judgment, Docket Entry No. 59, at Exhibit B).

[57]<u>See</u> Cancellation Letter.

-33-

Additionally, a reasonable fact-finder could infer from the evidence in the record that Howard, as owner and/or operator of the EI 294-B, derived a benefit from it and the attached rope swing. First, one could reasonably infer that Howard, as owner, received a share of profits from the gas produced from the platform's wells. Even after gas production was halted, Howard could be considered to derive a benefit from its ownership and custody of the platform and the rope swing because such ownership and custody enabled Howard to fulfill its obligation to decommission the platform. Cf. Dupree, 765 So.2d at 1012 (concluding that the defendant derived a benefit from its custody of the defective thing because "such custody allowed [the defendant] to fulfill its statutory responsibilities . . . [and] its intragovernmental responsibilities"). Moreover, looking to the rope swing specifically, a fact-finder could conclude that Howard benefitted from it because there is evidence in the record suggesting that it provided the only means of access to the platform for personnel.[58] Without the rope swing, personnel could not have reached the platform to conduct operations thereon. Accordingly, a genuine issue of material fact exists as to whether Howard had custody of the platform and the rope swing and, therefore, as to whether it had a statutory duty under articles 2317 and 2317.1.[59]

_____

[58]See Oral & Videotaped Deposition of John Bourg, Jr., at 63-64 (Jan. 6, 2009) (included in Plaintiff's Response to Motions for Summary Judgment, at Exhibit 1).

[59]The court notes that a fact-finder could conclude that both Howard and Greystar had custody of the platform and rope swing.
(continued...)

2.   <u>Breach</u>

Under article 2317.1 a custodian of a thing has a "two-prong duty" to (1) exercise reasonable care to identify unreasonably dangerous conditions associated with the thing, and (2) to exercise reasonable care to prevent any damage that the thing may cause. <u>Myers</u>, 801 So.2d at 1108.   Howard asserts that it had no actual knowledge of the defect in the rope swing.   This, however, does not absolve Howard of liability because article 2317.1 provides that a custodian may be liable without actual knowledge of the defect if, "in the exercise of reasonable care, [the custodian] <u>should have known</u>" of the defect.   La. Civ. Code Ann. art. 2317.1 (emphasis added).   Howard tacitly admits that it did not make any attempt to learn of any defects associated with the rope swing, but asserts that reasonable care was nevertheless exercised by Greystar since Greystar inspected the rope swing on August 4, 2007, only nine days before Bourg's accident occurred.   Even assuming <u>arguendo</u> that Greystar's efforts could be credited to Howard, the court is not persuaded that Howard did not breach its duty as a matter of law. Questions of reasonableness are particularly inappropriate for summary judgment, and should be left to the fact-finder.   <u>See</u> 10A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, <u>Federal Practice and Procedure</u> § 2729 (2d ed. 1998) ("[I]t is usually for

---

[59](...continued)
<u>See</u> <u>Dupree</u>, 765 So.2d at 1009 ("[M]ore than one party may have custody or <u>garde</u> of a thing under La. Civ. Code art. 2317.").

-35-

the jury to decide whether the conduct in question meets the reasonable-person standard. . . . Summary judgment is particularly inappropriate when resolving questions of negligence requires an inquiry into . . . whether defendant knew or should have known that its property presented some danger.").

Howard has failed to show that there are no genuine issues of material fact as to whether it owed a duty to Bourg and/or whether it breached that duty.[60]   Accordingly, Howard's motion for summary judgment will be denied.

## V.   Conclusion and Order

Based on the foregoing analysis, Entre Holdings Company's Motion for Summary Judgment (Docket Entry No. 57) is **GRANTED**. Defendant Greystar Corporation's Motion for Summary Judgment (Docket Entry No. 59) and Defendant Howard Energy Co., Inc.'s. Motion for Summary Judgment (Docket Entry No. 58) are **DENIED**.

**SIGNED** at Houston, Texas, on this 8th day of April, 2009.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[60]The court need not address the other grounds asserted by Bourg as a basis for Howard's liability nor Howard's argument that it cannot be vicariously liable for the acts of its independent contractors.

-36-